UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HAROLD AMON HOUSTON ET AL.                    CIVIL ACTION

VERSUS                                        NO. 16-17558

BLAINE HOWARD ET AL.                          SECTION "E"(2)

## REPORT AND RECOMMENDATION

Plaintiffs, Harold Amon Houston ("Mr. Houston") and his sister, Wynika Trachelle Houston ("Ms. Houston"), originally filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Jefferson Parish Sheriff's Deputies Blaine Howard and Andre Nelson. Mr. Houston is a prisoner currently incarcerated in the Jefferson Parish Correctional Center in Gretna, Louisiana. Ms. Houston is not incarcerated. Plaintiffs' complaint alleges that (1) Mr. Houston was falsely arrested and subjected to excessive force by defendants during his May 8, 2016 arrest, and (2) Ms. Houston was falsely arrested and subjected to excessive force by defendants during the same incident for recording the attack on Mr. Houston. Ms. Houston also alleges that her phone was taken from her during the arrest and was never returned to her. Record Doc. No. 4 (Complaint).

On April 20, 2017, I conducted a telephone conference in this matter. Record Doc. No. 17. Participating via telephone were plaintiffs pro se; Danny Martiny, counsel for defendants. Plaintiffs were sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

# THE RECORD

Testimony of Harold Houston

Mr. Houston testified that, at the time of the conference, he was incarcerated in the Jefferson Parish Correctional Center on charges arising from his arrest on May 8, 2016, of resisting arrest by force or violence and being a convicted felon in possession of a firearm. He said he was awaiting trial on these charges, which was set for May 1, 2017. He confirmed that he has two claims in this case: (1) he was beaten by the arresting police officers and (2) he was falsely arrested.

Mr. Houston stated that he and his sister were having drinks around 2:30 a.m. on May 8, 2016, at a local lounge they frequented, when Jefferson Parish deputies arrived. He said that the officers were familiar to him from his previous incarcerations. He testified that he knew he should not be at the bar because he was on parole for being a convicted felon with a firearm and illegal possession of a firearm, so he tried to move away from the deputies through the crowd of about 60 to 80 people. He said that the officers followed him, caught up with him and started beating him.

Plaintiff stated that he did not know why the deputies came to the lounge or whether they had a warrant for his arrest, but they knew him. He testified that he walked across the street to get away and then began running when an officer got out of a car, "pinpointed" him, avoided other people who were on the street and came straight for him. He said he ran for about one block with the officers pursuing him. He stated that he

stopped running and got down on his knees when he saw that his sister was recording the incident on her cell phone.

Mr. Houston testified that one of the officers pulled a taser, but he put the taser away when plaintiff went down on his knees. He stated that the other officer came up and they both started hitting him. Plaintiff said he thought that Deputy Nelson hit him first and then called Deputy Howard over, but that both of them hit him. He testified that he tried to go down on the ground, but that Deputy Nelson grabbed his hair, pulled his head back and punched him in the face and nose. Mr. Houston stated that Deputy Howard hit him in the same way. He said the whole incident lasted a couple of minutes.

Plaintiff stated that, as a result of the beating, he had a "knot" on his forehead, some "minor" scrapes and cuts, and a swollen nose. He said he did not know if his nose was fractured. He testified that his nose is not back to where it was before, but that the jail refused him medical treatment, saying there was nothing wrong with him. He said he complained about having severe headaches and a swollen nose at the jail.

Mr. Houston stated that he has received and reviewed the medical records from the Jefferson Parish Correctional Center, which the court ordered produced in this case. He testified that jail nurses gave him a band-aid for his cuts, but the medical records were not accurate because they do not show that he complained about headaches.

Mr. Houston testified that his sister recorded Deputies Nelson and Howard "taking swings at" him. Plaintiff said that his sister was telling him not to worry because she was

recording the incident. Mr. Houston thought that the officers initially were not paying any attention to his sister and did not know she was a family member until they heard her speak. He stated that, after Ms. Houston spoke to him, the deputies grabbed her, handcuffed her behind her back and took her phone away.

Mr. Houston said he was handcuffed <u>after</u> the officers hit him. He said the officers hit him for two to three minutes, during which he was not resisting in any way. He confirmed that he was charged with resisting arrest and being a felon with a firearm and that the charges were then still pending. Plaintiff testified that his false arrest claim applies to both charges against him. He stated that he was never in possession of a firearm and did not resist arrest. He admitted that he ran from the officers, but said he did not take any swings at or try to harm the officers in any way.

On cross-examination, Mr. Houston stated that he had read the police report regarding his arrest and that he was not doing anything when the officers arrived that would have caused them to arrest him. He testified that he ran because he was on parole for being a convicted felon in possession of a firearm and knew that one of the conditions of his parole was that he should not be in a lounge where drinks are sold. He said he was familiar with the officers and they were familiar with him, and they walked past everyone else and headed straight for him. Plaintiff denied telling the police that he had marijuana with him or that he had discarded marijuana while he was running. He denied that the

officers recovered a gun that he had discarded while running and stated that he did not own or have a gun on him when the officers approached him.

Mr. Houston testified that he has been incarcerated since his arrest on May 8, 2016, and that he did not receive medical treatment anywhere except the Jefferson Parish Correctional Center. He said he "stayed downstairs" for about three days, filled out a medical request form when he "came up" and then saw a doctor who gave him "some type of Motrin." He said he filled out another form later and "they did the same thing, so basically I really didn't have too much treatment" for his injuries suffered in the arrest. He stated that he last saw a doctor about two weeks after he was arrested. He testified that his lacerations and swollen nose healed and his headaches got better within three weeks, but he still has headaches occasionally.

Staff of the undersigned magistrate judge contacted the Clerk of Court of the 24th Judicial District Court for the Parish of Jefferson, who advised that Mr. Houston pled guilty on June 14, 2017 to one count of being a convicted felon in possession of a weapon and one count of resisting arrest in Criminal Action No. 16-3682, Division K. He was sentenced to thirteen years at hard labor pursuant to a multiple offender bill on the convicted felon charge and to three years at hard labor on the resisting arrest charge, the sentences to run concurrently. The docket records of the Fifth Circuit Court of Appeal for the State of Louisiana available online indicate that, as of August 2, 2017, Mr. Houston has not appealed his convictions or sentences.

<u>Testimony of Wynika Houston</u>

Ms. Houston confirmed that she has three types of claims in this case: (1) the deputies used excessive force against her, (2) she was falsely arrested and booked with interfering with a law enforcement officer, and (3) her phone was confiscated and never returned. She said she did not know the status of the charge against her. She stated that she went to the Second Parish Court about two weeks after she was released from jail, was told that the court had no court date set for her and still has not received a trial date.

Ms. Houston testified that, on May 8, 2016, she was standing outside the bar talking with her brother and some friends when four or five Jefferson Parish Sheriff's cars pulled up. She stated that the officers suddenly started coming for her brother and he took off running. She said she saw her brother stop, get on his knees and put his hands up. She testified that Deputy Nelson charged Mr. Houston, threw him on the ground and started beating him. She stated that Deputy Howard came right behind Deputy Nelson and also began beating her brother.

Ms. Houston said she quickly took out her phone and started recording from about 10 feet away. She testified that she was asking the officers why they were beating her brother because he had not done anything. She stated that Mr. Houston was calling her name and that the officers told her repeatedly to keep back. She said she was really nervous and she backed up onto the curb from where she had been standing in the street. She testified that the officers told her to get out of the street because she might get hit.

Ms. Houston said she believed that the officers did not want her to record their beating of her brother. She stated that she walked around and continued to record from about 20 feet away. She testified that Deputy Howard said "115 her," referring to Ms. Houston, to a tall, male, Caucasian officer.

Ms. Houston said she did not know the name of this officer, but he came up to her, grabbed her and "jerked" her phone out of her hand. She stated that she hurriedly locked the phone before the officer took it. She testified that the officer did not "really make any horrible [physical] contact" with her, but that he kept grabbing her while she tried to walk away, which she did because she had not done anything wrong. She said the officer did not strike her or make any other harmful contact with her, but came to take her phone away and take her to jail.

Ms. Houston said she was arrested and placed in the back of Deputy Nelson's car while they awaited a female officer. She testified that she was eventually searched by a female officer and that she and four other people who were also arrested remained at the scene for an hour or two after her brother was taken away. She stated that each of the arrestees was taken to the jail in a separate car and then were all booked together. Plaintiff said she was brought to a room where she was shown and asked to sign for her property, which included her purse and its contents, but did not include her iPhone 6S. She said she refused to sign because her phone was not there. She testified that she was

taken to the women's tank and spent about 18 hours in jail before she was released the night of Sunday, May 8, 2016.

Ms. Houston stated that she was falsely arrested for interfering with a police officer. She said she did not interfere with the deputies and was not in their way, but stayed several feet away from them. She believed that the deputies did not want her "to catch their dirty work, beating on my brother for no reason [when] he was not resisting."

Plaintiff testified that her phone has not been returned. She said she called the Sheriff about her phone and spoke to the sergeant who had been in charge of the night shift when she was arrested. She said the sergeant told her that her phone had been "misplaced" and gave her an item number. She did not believe this and thought that the officers were unable to delete the video from her phone because she had locked it.

Ms. Houston stated that she reported Deputies Howard and Nelson to Internal Affairs. She said that she last saw the phone when Deputy Howard tried to unlock it and slammed it on the roof of his car because he was mad that he could not unlock it. She testified that the Internal Affairs detective said he could not understand why the sergeant told her that the phone was misplaced because it was evidence. Plaintiff stated that she identified a picture of Deputy Howard and the detective said that he would get back to her. She said her last contact with the Sheriff's office regarding the phone was at the end of May 2016.

Ms. Houston agreed with her brother's testimony about the length of the beating and the extent of his injuries. She stated that she saw her brother when they were being booked. She said his face looked a little swollen and he had a "hickey" on his forehead.

On cross-examination, Ms. Houston stated that she and her brother were standing outside the bar about 15 feet from the door, talking but not drinking, when the police arrived about 2:00 a.m. She said neither the officers nor her brother said anything before Mr. Houston started running. She knew that her brother was not supposed to be there. She testified that she knew that her brother did not have any drugs or weapons on him because he had just left her house.

Ms. Houston said she did nothing when her brother ran off. She stated that she saw where the police cars were going, so she walked over there. She testified that, when she arrived, she saw Mr. Houston stop running, kneel down and put his hands up before he was beaten. She said the deputies were running after her brother and had no contact with him before he stopped and knelt down. She stated that, when the officers caught up with Mr. Houston, they started beating him.

Ms. Houston said that her brother and the deputies almost ran into her because they were running toward her as she walked toward the police cars. She stated that Mr. Houston ran for a block almost in a circle and then stopped.

Plaintiff said she saw Deputy Howard slam her phone on the roof of his car while she was sitting in the back of Deputy Nelson's car, which was the last time she saw her

phone. She stated that Deputy Howard could not open the phone because it was locked. She believed that the officers kept the phone to delete the video, but she did not hear anyone say that. She said she contacted Apple and her service provider, T-mobile, to try to track her phone after she went to Internal Affairs, but that T-mobile told her they could no longer track the phone because her service contract had been cancelled after she stopped paying when she no longer had the phone.

At the conclusion of the <u>Spears</u> hearing, the court directed both Ms. Houston and defense counsel to investigate the status of the criminal charge against Ms. Houston and report the status to the court in writing. Record Doc. No. 23. Defense counsel subsequently provided the following information to the court:

> According to the records of the Sheriff's Office, on the date [of] the incident which forms the basis of this matter, [Ms. Houston] was charged with four outstanding municipal attachments and interfering with a police investigation. . . . [T]he municipal attachments were satisfied, and the interference with a police investigation charge was accepted by the district attorney's office and referred to Second Parish Court. . . . It appears that Ms. Houston still has an outstanding attachment issued by the court in these proceedings.

Record Doc. No. 25. Defense counsel attached to his submission the latest information from Case No. S1318292 of Division "B" of Second Parish Court, which indicates that the last activity on Ms. Houston's record was on January 23, 2017. The docket states that Ms. Houston walked in on that date and set an appointment for January 26, 2017.

## ANALYSIS

### I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Lee v. Hennigan, 98 F. App'x 286, 287 (5th Cir. 2004) (citing Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998)); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998);  Lewis v. Sec'y, DOC, No. 2:10-CV-547-FTM-29, 2013 WL 5288989, at *2 (M.D. Fla. Sept. 19, 2013), aff'd, 589 F. App'x 950 (11th Cir. 2014).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1); Lewis v. Charlotte Corr. Inst. Emps., 589 F. App'x 950, 952 (11th Cir. 2014); Thompson, 213 F. App'x at 942; Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005.  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow

proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiffs' complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous, because their claims lack an arguable basis

in law, or under Rule 12(b)(6) in light of their testimony explaining the factual basis of their claims, or under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). Plaintiffs' complaint, as amended by their testimony at the <u>Spears</u> hearing, fails to state a claim under the broadest reading.[1]

## II.  HECK BARS PLAINTIFFS' SECTION 1983 EXCESSIVE FORCE AND FALSE ARREST CLAIMS

Mr. Houston testified at the <u>Spears</u> hearing that he was then incarcerated in the Jefferson Parish Correctional Center based upon charges arising from his arrest on May 8, 2016, of resisting arrest by force or violence and being a convicted felon in possession of a firearm, and that his trial on these charges was set for May 1, 2017. After that date, staff of this court contacted the Clerk of Court of the 24th Judicial District Court for the Parish of Jefferson, who advised that Mr. Houston pled guilty on June 14, 2017, to one count of being a convicted felon in possession of a weapon and one count of resisting arrest by force or violence and was sentenced to sentenced to thirteen years at hard labor pursuant to a multi-bill on the convicted felon charge and to three years at hard labor on the resisting arrest charge, the sentences to run concurrently. The online docket records of the Fifth Circuit Court of Appeal for the State of Louisiana indicate that, as of August 2, 2017, Mr. Houston has not appealed his convictions or sentences.

---

[1] The court must "liberally construe briefs of <u>pro se</u> litigants and apply less stringent standards to parties proceeding <u>pro se</u> than to parties represented by counsel," <u>Smith v. Lonestar Constr., Inc.</u>, 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Ms. Houston testified that she was charged in the Second Parish Court with interfering with a law enforcement officer arising from her arrest on May 8, 2016. Staff of the undersigned magistrate judge contacted the Second Parish Clerk of Court and confirmed that no additional activity has occurred in the case since January 26, 2017, and that the charge against Ms. Houston of interference with a police investigation is still pending without any trial date.

Plaintiffs clearly confirmed during their testimony that the May 8, 2016 incident is the same incident that was the basis of Mr. Houston's subsequent convictions, for which he is currently serving a prison sentence, and of the pending charge against Ms. Houston. Thus, regardless whether plaintiffs seek injunctive relief or damages under Section 1983 for use of excessive force or false arrest during this arrest, their claims must be dismissed at this time under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). Mr. Houston's convictions and confinement for resisting arrest by force or violence and being a convicted felon in possession of a weapon and the charge against Ms. Houston of interference with a police investigation have <u>not</u> been set aside in any of the ways described in <u>Heck</u>. Thus, all claims for relief that both plaintiffs assert against all defendants, challenging Mr. Houston's continued confinement and conviction and the charge against Ms. Houston, are premature and must be dismissed.

In <u>Heck</u>, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state criminal charges or confinement, which have

not been reversed, expunged, invalidated, or called into question by a federal court's

issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state tribunal authorized
> to make such determination, or called into question by a federal court's
> issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for
> damages bearing that relationship to a conviction or sentence that has <u>not</u>
> been so invalidated is not cognizable under § 1983. Thus, when a state
> prisoner seeks damages in a § 1983 suit, the district court must consider
> whether a judgment in favor of the plaintiff would necessarily imply the
> invalidity of his conviction or sentence; if it would, the complaint must be
> dismissed unless the plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.

<u>Id.</u> at 486-87 (emphasis in original) (footnote omitted). Although the Supreme Court's

decision in <u>Heck</u> concerned a civil action for monetary damages, the Fifth Circuit has

also applied <u>Heck</u> when the plaintiff seeks injunctive relief. <u>Clarke v. Stalder</u>, 154 F.3d

186, 189 (5th Cir. 1998) (citing <u>Edwards v. Balisok</u>, 520 U.S. 641 (1997)).

As the United States Court of Appeals for the Fifth Circuit has found in the

decision cited below, plaintiffs' Section 1983 claims of excessive force and false arrest

in the instant case necessarily imply the invalidity of Mr. Houston's convictions for

resisting arrest by force or violence and being a convicted felon in possession of a

weapon and of the pending charge against Ms. Houston for interfering with a law

enforcement investigation under <u>Heck</u>, and those convictions and charges have <u>not</u> been

set aside. Because the convictions of Mr. Houston and the charges against Ms. Houston

still stand and have not been set aside in any of the ways set out in <u>Heck</u>, their excessive

force and false arrest claims are effectively barred by <u>Heck</u>.

Under Louisiana law, the crime of resisting a police officer with force or violence

is any of the following when the offender has reasonable grounds to believe
the victim is a police officer who is arresting, detaining, seizing property,
serving process, or is otherwise acting in the performance of his official
duty:
(1) Using threatening force or violence by one sought to be arrested or
detained before the arresting officer can restrain him and after notice is
given that he is under arrest or detention.
(2) Using threatening force or violence toward or any resistance or
opposition using force or violence to the arresting officer after the arrested
party is actually placed under arrest and before he is incarcerated in jail.
(3) Injuring or attempting to injure a police officer engaged in the
performance of his duties as a police officer.
(4) Using or threatening force or violence toward a police officer
performing any official duty.

La. Stat. Ann. § 14:108.2(A).

Under Louisiana law, the crime of interfering with a law enforcement investigation

is defined as

the intentional interference or obstruction of a law enforcement officer
conducting investigative work at the scene of a crime or the scene of an
accident by refusing to move or leave the immediate scene of the crime or
the accident when ordered to do so by the law enforcement officer when the
offender has reasonable grounds to believe the officer is acting in the
performance of his official duties.

La. Rev. Stat. § 14:329(A).

In a case presenting a claim similar to the one asserted by plaintiffs in this case,

[plaintiff] was arrested and convicted of battery of an officer. In Louisiana,
self-defense is a justification defense to the crime of battery of an officer.

17

> To make out a justification defense, the criminal defendant charged with battery of an officer must show that his use of force against an officer was both reasonable and necessary to prevent a forcible offense against himself. Because self-defense is a justification defense to the crime of battery of an officer, [plaintiff's] claim that [the officers] . . . used excessive force while apprehending him, if proved, necessarily would imply the invalidity of his arrest and conviction for battery of an officer. This is true because the question <u>whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction</u>.

<u>Hudson v. Hughes</u>, 98 F.3d 868, 873 (5th Cir. 1996) (citations omitted) (emphasis added).

In the instant case, Mr. Houston was convicted of resisting arrest with force or violence and of being a felon in possession of a firearm and Ms. Houston is currently charged with interfering with a law enforcement investigation. Plaintiffs' claims that Deputies Howard and Nelson used excessive force and/or falsely arrested them would necessarily imply the invalidity of Mr. Houston's convictions for his own use of force and of being a felon in possession of a firearm, and the invalidity of the pending charge against Ms. Houston, and ultimately conviction if she is convicted, on the charge of interfering with a law enforcement investigation. <u>Heck</u>, 512 U.S. at 479; <u>Arnold v. Town of Slaughter</u>, 100 F. App'x 321, 325 (5th Cir. 2004); <u>Hainze v. Richards</u>, 207 F.3d 795, 799 (5th Cir. 2000); <u>Boyd v. Biggers</u>, 31 F.3d 279, 283 (5th Cir. 1994); <u>see also</u> <u>Conlan v. King</u>, No. 15-50786, 2017 WL 1093176, at *1 (5th Cir. Mar. 22, 2017) (citing <u>Hudson</u>, 98 F.3d at 872; <u>Hamilton v. Lyons</u>, 74 F.3d 99, 103 (5th Cir. 1996); <u>Wells v. Bonner</u>, 45

F.3d 90, 94 (5th Cir. 1995)) (judgment in plaintiff's favor on false arrest claim would necessarily imply invalidity of conviction for interstate stalking); <u>Ducksworth v. Rook</u>, 647 F. App'x 383, 386-87 (5th Cir. 2016) (citing <u>Heck</u>, 512 U.S. at 486 n.6; <u>Daigre v. City of Waveland</u>, 549 F. App'x 283, 286 (5th Cir. 2013); <u>DeLeon v. City of Corpus Christi</u>, 488 F.3d 649, 656-57 (5th Cir. 2007); <u>Parm v. Shumate</u>, 513 F.3d 135, 142 (5th Cir. 2007); <u>Wells</u>, 45 F.3d at 94) (quotations omitted) (Excessive force and false arrest claims by plaintiff who had been convicted of disorderly conduct, assault on a police officer and resisting arrest were properly dismissed under <u>Heck</u>. "[T]o prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment. . . . [Section] 1983 unlawful-arrest claims fail in cases where [a] state defendant is convicted of and sentenced for the crime of resisting arrest . . . [because] he would have to negate an element of the offense of which he has been convicted.").

Mr. Houston's convictions and the charge against Ms. Houston have not been set aside in any of the ways described in <u>Heck</u>. Thus, any claims of excessive force or false arrest in violation of Section 1983 are premature and must be dismissed, until such time that Mr. Houston's criminal convictions are set aside or Ms. Houston is acquitted or, if she is convicted, her criminal conviction is set aside. As the Fifth Circuit has noted, the dismissal of plaintiffs' Section 1983 claims is with prejudice to their being asserted again

until the <u>Heck</u> conditions are met.  <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir. 1996).

III.    <u>STOLEN PHONE</u>

Ms. Houston alleges that her telephone was taken during her arrest.  Construed broadly, these allegations may constitute a complaint that she was deprived of her property in violation of her due process rights.  However, Ms. Houston fails to state a cognizable Section 1983 claim, and her claim must be dismissed, because any such claim under Section 1983 has been specifically barred by the United States Supreme Court.

In deciding whether state action has violated an individual's right to due process, the court must address two questions: "whether the state action has deprived the individual of a protected interest–life, liberty or property," and if so, "whether the state procedures available for challenging the deprivation satisfy the requirements of due process." <u>Augustine v. Doe</u>, 740 F.2d 322, 327 (5th Cir. 1984); <u>accord</u> <u>Neuwirth v. La. State Bd. of Dentistry</u>, 845 F.2d 553, 556 (5th Cir. 1988); <u>Cuellar v. Tex. Emp't Comm'n</u>, 825 F.2d 930, 934 (5th Cir. 1987).

The Supreme Court has ruled that a state actor's random and unauthorized deprivation of a plaintiff's property, whether negligent or intentional, does not result in a violation of due process rights if the state provides an adequate post-deprivation remedy.  <u>Alexander v. Ieyoub</u>, 62 F.3d 709, 712 (5th Cir. 1995) (citing <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984); <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981), <u>overruled in part</u>

on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); accord Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996). The Fifth Circuit has recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. Bennett v. La. Dep't of Pub. Safety & Corr., 61 F. App'x 919, 2003 WL 1109690, at *1 (5th Cir. 2003); Mahmoud v. Bowie, 234 F.3d 29, 2000 WL 1568178, at *1 (5th Cir. 2000); Copsey v. Swearingen, 36 F.3d 1336, 1342-43 (5th Cir. 1994); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

The deprivation of property alleged by Ms. Houston in this case, whether negligent or intentional, is precisely the type of "random and unpredictable as well as unauthorized" conduct that warrants application of the Parratt/Hudson doctrine and forecloses her Section 1983 suit in federal court. Alexander, 62 F.3d at 712 (citing Zinermon v. Burch, 494 U.S. 113 (1990)). Plaintiff's state law remedy for the alleged negligent or intentional deprivation of her property lies in a conversion or other tort suit for damages in state court.

Because Ms. Houston alleges precisely the type of conduct that warrants application of the Parratt/Hudson doctrine, her complaint fails to state a claim for which relief may be granted pursuant to Section 1983 and must be dismissed. Plaintiff remains free to pursue her claim concerning her lost telephone in state court against the state officials who allegedly lost or seized it.

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiffs' Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), or pursuant to Heck.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____14th____ day of August, 2017.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen (14) days.